UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTINA INUMIDUN IWALA,

                      Plaintiff,

        -against-

NEW YORK CITY POLICE DEPARTMENT
032 PRECINT; ALEX YAKATALLY;
DANIEL GINES SHIELD 19125; STEVEN
MAZZAMUTO OR UNNAMED ACTOR
SHIELD NUMBER 2775; JENNIFER
GARCIA SHIELD 5765; BRANDON
JAIRAM SHIELD 20545,

                   Defendants.

23-CV-5078 (LTS)

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District Judge:

       Plaintiff, who is appearing *pro se*, brings this action under the Court's federal question jurisdiction, alleging that New York City police officers falsely arrested her and violated her rights in other ways. By order dated September 27, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

## STANDARD OF REVIEW

       The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff filed this complaint against the following Defendants: (1) the New York City Police Department, 32nd Precinct; (2) Alex Yakatally; (3) Daniel Gines, shield 19125; (4) Steven Mazzamuto, shield 2775; (5) Jennifer Garcia, shield 5765; (6) Brandon Jairam, shield 20545; (7) Akter shield 19881; and (8) John and Jane Does 1-3. The following summary of the allegations is drawn from the complaint, which does not present the underlying events in a straightforward

2

manner. Adding to the confusion is the fact that Plaintiff refers to herself as the "Injured Party," ("IP"), "the beneficiary," and "the representative," and to Defendants as "actors," "white shirt defendants," and "entities acting as officers."[1] (ECF 1 at 3.) In this order, the Court will use the terms "Plaintiff" and "Defendants" or "officers" to refer to the parties.

On January 20 2021, Officer Gines gave Plaintiff's "stalker ex-boyfriend and his female accomplice known as 'Nunu' tips on how to avoid police being able to remove the two criminals from the premises." (*Id.*) In February 2021, Gines "violated [an] active order of protection by asking [Plaintiff] details about the case and the order of protection, such as, "'[w]hy did you tell the judge you dated?'" (*Id.*) Later that month, "as [Plaintiff] pulled out [her] phone to begin recording, [Gines] call[ed] [her] a 'tranny [n-word]' before turning on his body cam then reaching over as if to turn on his partners body camera and smiling." (*Id.*) The complaint does not provide any context in which these events arose. '

On September 27 2022, Plaintiff was working as a "location scout" on Frederick Douglass Boulevard in Harlem, and a "black male verbally accosted her while she was on the phone, which led to "a physical altercation" that left Plaintiff "unable to walk." (*Id.*) Plaintiff called 911, and "attempted to use her work phone's flash feature to get the approximately six [officers'] attention," but they were "across the avenue laughing with each other at something on their phones rather than finding [Plaintiff]." (*Id.*) An officer called Plaintiff to find out where she was, and "instructed [Plaintiff] to hop or crawl from a safe area with witnesses to an area easier for them to find her." (*Id.*) Plaintiff showed the officers a video on her phone of "the unnamed assailant walking away with the words 'HELP' clearly audible in the background." (*Id.*) The

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original, unless noted otherwise.

assailant was not arrested, and the "hate crime" went unreported. (*Id.*) Emergency responders "informally diagnos[ed]" Plaintiff with a "sore ankle," although she later learned that she "sustained at least a partial rupture to her Achilles." (*Id.*) She "was abandoned at Columbia Hospital's Emergency Room, and after waiting nearly two hours, limped to a car service without any assistance." (*Id.*)

On October 18, 2022, Plaintiff and a "Caucasian male" each called 911 to report the other to the police; the male alleged that Plaintiff had "hurt" him." (*Id.*) Officers Garcia and Jairam responded to the call:

> Garcia and Jairam "were informed of an injury before [Plaintiff] was illegally and unlawfully detained leading to further damage to [her]. [Plaintiff] informed [them] of contracts barring unauthorised recording and documentation. While unlawfully seized and illegally in custody, [Plaintiff] lost balance and subsequently fell to the ground. While on the ground, actor Jennifer Garcia stated 'Yeah right, you're not hurt yet" and at some point stomped in addition to leaving [Plaintiff] on the ground allowing onlooker(s) to step on and kick [her] ankle causing further damage to [her] Achilles tendon.

(*Id.*)

Plaintiff asked why she was being detained, but the officers "claimed [she] was not being detained or arrested." (*Id.* at 5.) Plaintiff "demanded" to see a "magistrate over four" times, but she was held at the 32nd Precinct "for approximately thirty" minutes and may have been issued a desk appearance ticket. (*Id.*) According to Plaintiff, Garcia and Jairam invaded her privacy by "taking Plaintiff's private property and moving it into the public without" consent; took "images, audio, on any devices or streaming or transmitting node without consent"; and committed sexual misconduct, forcible touching, and kidnaping. (*Id.* at 5-6.)

The following week, Plaintiff received text messages from an unfamiliar number. (*Id.* at 7.) When Plaintiff went to the precinct to file a police report, she had to wait "in the cold, with a

disability for over an hour with no one appearing," and she was also "denied communication with" Defendant Yatakally. (*Id.* at 7.)

On June 1, 2023, Plaintiff "was held for ransom as debtor," "seized for over 19 hours under [a] false arrest warrant," and "received cruel and unusual punishment by being inhumanely starved and without water, and "asked to take off [her] head wrap or niqab in front of [a] stranger, in violation of her "faith and religion." (*Id.* at 1, 4, 8.)

Plaintiff invokes 42 U.S.C. § 1986 and 14141; the Fourth, Fifth, and Eighth Amendments to the United States Constitution; the Americans With Disabilities Act; the Rehabilitation Act; and 18 U.S.C. § 241, 242, 654, and 1510. Plaintiff asserts claims of false arrest; false imprisonment; malicious prosecution; and gender discrimination. In addition, Plaintiff alleges that Defendants violated her rights to equal protection, privacy, a fair trial, and to "confront evidence." (*Id.* at 8.) Plaintiff further asserts that Defendants "trafficked" her, and engaged in "securities fraud," extortion, defamation, harassment, sexual misconduct, forcible touching "with threat of deadly weapon," and kidnaping. (*Id.*)

Plaintiff seeks more than $1 billion in money damages for lost wages and "past due and overdue invoices." She also seeks: (1) a "speedy trial"; (2) to have "all records, images, audio, footage, and other identifying variables" about her be "eliminated from all records, servers and storage in accordance with 5 U.S.C. § 552a"; and (3) an "investigation" into the 32nd Precinct.

## DISCUSSION

### A. 42 U.S.C. § 1983

The Court construes Plaintiff's claims that Defendants violated her constitutional rights as arising under 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and

(2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

      1.      "NYPD/32nd Precinct" and the City of New York

     Plaintiff's claims against the "NYPD/32nd Precinct" must be dismissed because an agency of the City of New York is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").

     It may be Plaintiff's intention to assert claims against the City of New York. When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. Of City of New York,* 436 U.S. 658, 692 (1978))); *Cash v. Cnty. Of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. Of Cnty. Comm'rs of Bryan Cnty. V. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

There are no facts in the complaint suggesting that a municipal policy, custom, or practice caused the violation of Plaintiff's constitutional rights. Plaintiff is granted leave to file an amended complaint should there be additional facts to support a claim against the City of New York.

2.      Individual Defendants

To state a claim under Section 1983 against individual defendants, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). A defendant may not be held liable under § 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official . . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

For the reasons discussed below, there are insufficient facts in the complaint to state plausible Section 1983 claims against any of the individual Defendants.

(i)      Officer Gines

According to Plaintiff, Officer Gines spoke with her "stalker ex-boyfriend and his female accomplice," and improperly asked her questions about an order of protection. That Gines spoke with Plaintiff's ex-boyfriend and made comments to her about an order of protection, does not give rise to an inference that he violated her constitutional rights.

Plaintiff also claims that Gines addressed her using an offensive slur. It is well established that "verbal harassment alone does not amount to a constitutional deprivation." *Ali v. Connick*, 136 F. Supp. 3d 270, 276 (E.D.N.Y. 2015). Even "the use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to [Section] 1983," absent some additional appreciable injury. *Baskerville v. Goord*, No. 97-CV-6413, 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (holding that name-calling without "any appreciable injury" did not violate inmate's constitutional rights); *Haussman v. Fergus*, 894 F. Supp. 142, 149 (S.D.N.Y. 1995) ("[T]he taunts, insults and racial slurs alleged to have been hurled at plaintiff by defendants, while reprehensible if true, do not comprise an infringement of constitutional guarantees."). By contrast, allegations of verbal harassment coupled with other injury can state a claim for a violation of constitutional rights. *See Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order) ("When the verbal harassment and simultaneous physical abuse . . . are considered together, we have little trouble concluding that plaintiff's allegations were sufficient to state a § 1983 claim for discrimination on the basis of race . . . .").

Here, Plaintiff has alleged that Gines used an epithet reflecting prejudice based on race and gender identity. As offensive as this alleged conduct is, verbal harassment alone does not amount to a deprivation of rights protected by the U.S. Constitution. Because Plaintiff's interaction with Gines appears to have been limited to this verbal harassment, the facts alleged are insufficient to rise to the level of a violation of her constitutional rights.

(ii)     Mazzamuto, Akter, Doe defendants, Yakatally, Garcia, and Jairam

Plaintiff names Steven Mazzamuto, "Akter shield 19881," and Doe defendants in the caption of the complaint, but she does not allege any facts against any of them. Plaintiff thus

does not allege the manner in which they were personally involved in what occurred, and it is not clear why she named them as Defendants, or whether they may be held liable for what occurred. Plaintiff's sole allegation against Defendant Yakatally is that she was "denied" the right to "communicate" with him, which does not suggest that he violated her constitutional rights.

Plaintiff alleges that Garcia and Jairam unlawfully detained her on October 18, 2022, however, as discussed below, she does not provide sufficient facts for the Court to understand exactly what occurred and whether she plausibly state a claim against them, or any other individual officer, arising out of that arrest.

**B.    Section 1983 claims arising out of arrest**

1.    False arrest

Plaintiff's allegations suggest that she is raising a claim of false arrest or false imprisonment.[2] The Court first looks to state law to establish the elements of a false arrest claim under Section 1983. *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 378 (2017) (Alito, J, dissenting) ("[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.'"); *see also Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (holding that common law principles are meant simply to guide rather than to control the definition of

---

[2] The "elements of a claim for false imprisonment made pursuant to Section 1983 are the same as those for false arrest," *Copeland v. New York City Police Dep't*, No. 97-CV-4224 (DLC), 1998 WL 799169, at *2 (S.D.N.Y. Nov. 13, 1998), and thus, "the claims are analyzed in identical fashion," *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005); *see also Leibovitz v. Barry*, No. 15-CV-1722 (KAM), 2016 WL 5107064, at *8 (E.D.N.Y. Sept. 20, 2016) (analyzing false arrest and false imprisonment claims under both Section 1983 and New York law as "essentially the same causes of action"); *Murry v. Williams*, No. 05-CV-9438 (NRB), 2007 WL 430419, at *5 (S.D.N.Y. Feb. 8, 2007) ("[W]e consider claims of false arrest and false imprisonment to be synonymous causes of action, as the elements of both claims under New York law are the same." (citing *Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir. 1999))).

Section 1983 claims and courts should not "mechanically apply" the law of New York State), *abrogated on other grounds*, *Thompson v. Clark*, 596 U.S. 36 (2022).

Under New York law, to state a claim for false arrest, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).

Officers have probable cause to arrest when they "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis and citation omitted). "Probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (1994); *Curley v. Vill. Of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

Plaintiff alleges that, on October 18, 2022, she and an unidentified male reported each other to the police. The unidentified male alleged that Plaintiff had "hurt" him. (*Id.* at 4.) The complaint does not provide any context for these allegations, and Plaintiff does not explain why she was arrested or on what charges. Thus, the Court cannot assess whether there was probable cause for the arrest, or whether Plaintiff could possibly state a claim of false arrest or false imprisonment.

The complaint contains even less information about the June 2, 2023 arrest. Plaintiff's pleading does not describe the events leading up to that arrest, identify the officers involved in the arrest, what occurred during her detention, or identify the status of the charges. The Court grants Plaintiff leave to file an amended complaint to provide facts regarding the arrests on October 18, 2022, and June 2, 2023.

2.     Malicious Prosecution

The tort of malicious prosecution "remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007). To state a claim for malicious prosecution, a plaintiff must allege facts showing: (1) that the defendant initiated or continued a prosecution against the plaintiff; (2) that the defendant lacked probable cause to commence the proceeding or believe the proceeding could succeed; (3) that the defendant acted with malice; and (4) that the prosecution was terminated in the plaintiff's favor. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). Such a claim does not accrue until there is a favorable termination of the plaintiff's criminal proceedings. *See Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994).[3] "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious

---

[3] *See also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (italics in original)*; Heck*, 512 U.S. at 486-87 ("[I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . .") (footnote omitted).

prosecution, a plaintiff need only show that his prosecution ended without a conviction."

*Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022)

Plaintiff's criminal proceedings appear to be ongoing; without a favorable termination, she cannot pursue a cause of action for malicious prosecution. If the charges led to a conviction, Plaintiff would have to allege that the conviction has been invalidated or otherwise overturned; she has made no such allegation. Accordingly, the Court dismisses Plaintiff's claims of malicious prosecution under Section 1983 for failure to state a claim on which relief may be granted, *see* § 1915A(b)(1), but without prejudice to Plaintiff's assertion of these claims again, in a separate civil action, if her conviction is invalidated or otherwise overturned.

3.      Other misconduct

In her complaint, Plaintiff asserts that police officers subjected her to excessive force, discriminated against her on the basis of her gender and religion, and engaged in sexual misconduct and forcible touching. Because Plaintiff does not give details about what occurred, her allegations are conclusory and do not give rise to a plausible claim under Section 1983. The Court grants Plaintiff leave to file an amended complaint to provide more facts regarding these events, and in support of these claims.

Plaintiff makes other allegations that do not appear to give rise to any plausible claims under Section1983. The complaint suggests that the police would not allow her to file a police report, or investigate her complaint. As a general matter, crime victims do not have a stand-alone constitutional right to have officers investigate their complaints. *See Troy v. City of New York*, No. 13-CV-5082 (AJN), 2014 WL 4804479, at *6 (S.D.N.Y. Sept. 25, 2014) (holding that there is "no constitutional right to an investigation by government officials"), *aff'd*, 614 F. App'x 32 (2d Cir. 2015); *Lewis v. Gallivan*, 315 F. Supp. 2d 313, 316 (W.D.N.Y. 2004) ("[T]he law is well settled that no private citizen has a constitutional right to bring a criminal complaint against

another individual."); *cf. Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010) (in the procedural due process context, holding that parents had no constitutional due process property interest in adequate police investigation of motor vehicle collision that killed their son).

Plaintiff further alleges that Defendants "invaded her privacy" by "taking Plaintiff's private property and moving it into the public without" consent; took "images, audio, on any devices or streaming or transmitting node without consent." (ECF 1 at 2.) There exists a right to privacy under the Fourteenth Amendment that includes protecting "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). This constitutional protection against dissemination of information, however, is limited and extends only to highly personal matter such as medical conditions that are "excruciatingly private and intimate in nature." *Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 63-64 (2d Cir. 2011).

Here, Plaintiff does not appear to refer to the dissemination of information; instead, Plaintiff refers to the public display of "property." These allegations do not show that Defendants violated Plaintiff's privacy, and the Court dismisses those claims for failure to state a claim on which relief may be granted.

## C.     42 U.S.C. § 1986

Plaintiff asserts a claim under 42 U.S.C. § 1986. Section 1986 provides a remedy against individuals who "kn[ew] of and ha[d] the ability to aid in preventing a conspiracy [under 42 U.S.C. § 1985]. . . [and] decline[d] to take steps preventing that conspiracy. . . ." *Wahad v. FBI*, 813 F. Supp. 224, 232 (S.D.N.Y. 1993); *see* Section 1986. Claims under this section are only valid "if there is a viable conspiracy claim under section 1985." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994). Plaintiff does not invoke Section 1985[3], but the Court will construe the complaint to read as if she had.

To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege facts that plausibly show that there exists: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of his right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [§ 1985(3)] conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id*. (internal quotation marks and citation omitted). Vague and unsupported assertions of a conspiracy claim under § 1985(3) will not suffice. *See Gallop v. Cheny*, 642 F.3d 364, 369 (2d Cir. 2011) (Plaintiff's allegations of conspiracy were 'baseless' where plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the coconspirators."); *Cambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." (internal quotation marks omitted)). For that reason, claims under Section 1985 must be alleged "with at least some degree of particularity" and must include facts showing that the "overt acts which defendants engaged in . . . were reasonably related to the promotion of the claimed conspiracy." *Hernandez v. Goord*, 312 F. Supp. 2d 537, 546 (S.D.N.Y. 2004).

Plaintiff does not assert facts supporting the existence of an actual agreement between Defendants or factual details concerning the inception or operation of any conspiracy that was motivated by racial or class-based animus against her, or that Defendants' conduct was attributable or otherwise motivated by her race or other class-based factor recognized under Section 1985, or that Defendants singled her out because of her race or her membership in a

protected class. Because Plaintiff does not assert any facts suggesting that Defendants conspired to deny her the equal protection of the law, and her allegations are conclusory, the Court dismisses the conspiracy claims for failure to state a claim on which relief may be granted.

**D.      Section 14141**

Plaintiff also invokes the Violent Crime Control and Law Enforcement Act of 1994, codified at 42 U.S.C. § 14141. Under that statute:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

Section 14141(a). There is no private right of action contained within Section 14141. *See Miller v. Carpinello*, No. 06-CV-12940 (LAP), 2007 WL 4207282, at *7 (S.D.N.Y. Nov. 20, 2007). "By its terms, [Section 14141] provides enforcement authority only to the [United States] Department of Justice." *Inkel v. Bush*, No. 04-CV-69 (JBA), 2004 WL 2381747, at *3 (D. Conn. Oct. 19, 2004) (citing Section 14141(b)). Because there is no private right of action under Section 14141, Plaintiff's claim under that statute is dismissed for failure to state a claim on which relief may be granted.

**E.      Disability discrimination**

Plaintiff invokes the ADA, and the Court therefore considers whether she states a claim under Title II of the ADA, which prohibits disability discrimination by public entities, 42 U.S.C. § 12131 *et seq.*,[4] or under Title III, which prohibits disability discrimination in access to public

---

[4] Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title III of the ADA provides that "[n]o individual shall be

accommodations, 42 U.S.C. § 12181 *et seq.*[5] The purpose of the ADA is "to ensure evenhanded treatment between the disabled and the able-bodied." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Bklyn.*, 280 F.3d 98, 112 (2d Cir. 1998).

Plaintiff also invokes the Rehabilitation Act. Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). When brought together, claims under Title II and Section 504 may be treated identically." *Hilton v. Wright,* 928 F. Supp. 2d 530, 556-57 (N.D.N.Y. 2013) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

The sole allegation in the complaint that references a disability is that Plaintiff waited outside the precinct "in the cold, with a disability." (ECF 1 at 3.) Plaintiff does not provide facts regarding the nature of her disability. Even if Plaintiff is disabled, she makes no allegation that the incident described in the complaint was related to any disability that she might have. Thus, the Court cannot infer that any Defendant discriminated against Plaintiff because of a disability. Plaintiff thus fails to state a claim under the ADA or the Rehabilitation Act, and those claims are dismissed for failure to state a claim on which relief may be granted.

---

discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

[5] In addition, Plaintiff seeks only money damages, which are not available for a violation of Title III. *See Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) ("Monetary relief, however, is not available to private individuals under Title III of the ADA.").

**F.     Criminal statutes**

Plaintiff alleges that Defendants committed various crimes or violated federal criminal laws, and that she was the victim of a hate crime. She cannot, however, initiate the arrest and prosecution of an individual because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff direct prosecuting attorneys to initiate a criminal proceeding against Defendants, because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Instead, criminal activity can be reported to authorities, who will then make a determination about whether to prosecute. Accordingly, the Court dismisses Plaintiff's claims arising under 18 U.S.C. § 241, 242, and 1510; those alleging that Defendants engaged in criminal activity; and the claim that she was the victim of a hate crime, for failure to state a claim on which relief may be granted.

**G.     Ongoing proceedings**

As noted, the status of Plaintiff's state-court criminal proceedings is not clear. To the extent that Plaintiff, in seeking a "speedy trial," asks the Court to intervene in her pending state-court criminal proceeding, the Court must dismiss the claim. In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held that a federal court may not enjoin a pending state court criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Heicklen v. Morgenthau*, 378 F. App'x 1, 2 (2d Cir. 2010) (quoting *Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973)). Federal courts generally abstain from intervening in state criminal proceedings "'under the principle known as comity [because] a federal district court has no power to intervene in the

internal procedures of the state courts.'" *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006) (quoting *Wallace v. Kern*, 481 F.2d 621, 622 (2d Cir. 1973)).

Plaintiff does not allege any facts suggesting bad faith, harassment, or irreparable injury in connection with any pending charges or proceedings. The Court therefore may not intervene in that proceeding and dismisses Plaintiff's claim for a "speedy trial," or any other injunctive relief arising from ongoing state court criminal proceedings, for failure to state a claim on which relief may be granted.

## H.    State-law claims

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Because Plaintiff has been granted leave to file an amended complaint, the Court will determine at a later stage whether to exercise its supplemental jurisdiction of any state law claims she may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has

cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid claims of false arrest and excessive force under Section 1983, the Court grants Plaintiff 60 days' leave to amend his complaint to detail her claims.

Plaintiff is granted leave to amend her complaint to provide more facts *solely* about her claims of false arrest and excessive force. In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated her federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.[6]

## CONCLUSION

Plaintiff is granted leave to file an amended complaint, detailing the factual bases of her excessive force and/or false arrest claims, that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 23-CV-5078 (LTS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff may receive court documents by email by completing the attached form, Consent to Electronic Service.[7]

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

---

[6] Plaintiff, or someone on Plaintiff's behalf, has sent faxes directly to chambers. By Standing Order, and my Individual Practice Rules, *pro se* litigants must file papers by submitting them to the Pro Se Intake Unit. To submit a document for filing, Plaintiff must follow the Clerk's Office's guidelines and procedures, which are available on the Court's website under the section PRO SE SELF REPRESENTATION, which can be found here: https://nysd.uscourts.gov/prose. Any correspondence mailed, emailed, or faxed directly to chambers may be disregarded.

[7] If Plaintiff consents to receive documents by email, Plaintiff will no longer receive court documents by regular mail.

SO ORDERED.

Dated:    April 15, 2024
          New York, New York

                                        /s/ Laura Taylor Swain
                                    ─────────────────────────
                                        LAURA TAYLOR SWAIN
                                    Chief United States District Judge

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

Please list all your pending and terminated cases to which you would like this consent to apply. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

_____
Name (Last, First, MI)

_____
Address                     City                    State                   Zip Code

_____
Telephone Number                          E-mail Address

_____
Date                                        Signature

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

_____
_____
_____
_____
_____
_____
_____
_____
_____

*(In the space above enter the full name(s) of the defendant(s).  If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names listed in the above caption must be identical to those contained in Part I.  Addresses should not be included here.)*

____ Civ. _____ ( ____ )

**AMENDED
COMPLAINT**

Jury Trial:   ☐ Yes      ☐ No
                    (check one)

**I.      Parties in this complaint:**

A.      List your name, address and telephone number.  If you are presently in custody, include your identification number and the name and address of your current place of confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff       Name _____

                    Street Address _____

                    County, City _____

                    State & Zip Code _____

                    Telephone Number _____

B.      List all defendants.  You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual.  Include the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

*Rev. 12/2009*                                    1

Defendant  No. 1          Name  _____

                          Street Address  _____

                          County, City  _____

                          State & Zip Code  _____

                          Telephone Number  _____


Defendant  No. 2          Name  _____

                          Street Address  _____

                          County, City  _____

                          State & Zip Code  _____

                          Telephone Number  _____


Defendant  No. 3          Name  _____

                          Street Address  _____

                          County, City  _____

                          State & Zip Code  _____

                          Telephone Number  _____


Defendant  No. 4          Name  _____

                          Street Address  _____

                          County, City  _____

                          State & Zip Code  _____

                          Telephone Number  _____


## II.    Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction.  Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.      What is the basis for federal court jurisdiction?  *(check all that apply)*

          ☐ Federal Questions                    ☐ Diversity of Citizenship


B.      If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right

        is at issue?  _____

        _____

        _____


C.      If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

        Plaintiff(s) state(s) of citizenship  _____

        Defendant(s) state(s) of citizenship  _____

        _____

### III.    Statement of Claim:

State as briefly as possible the <u>facts</u> of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.    Where did the events giving rise to your claim(s) occur? _____

_____

B.    What date and approximate time did the events giving rise to your claim(s) occur? _____

_____

_____

C.    Facts:  _____

_____

| What happened to you? |

_____

_____

_____

| Who did what? |

_____

_____

_____

| Was anyone else involved? |

_____

| Who else saw what happened? |

_____

_____

_____

### IV.    Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _____

_____

_____

_____

_____

_____

**V.        Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are

seeking, and the basis for such compensation.  _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ____ day of _____, 20___.


Signature of Plaintiff        _____

Mailing Address              _____

_____

_____

Telephone Number          _____

Fax Number *(if you have one)*   _____


<u>Note</u>:   All plaintiffs named in the caption of the complaint must date and sign the complaint.  Prisoners must also provide their inmate numbers, present place of confinement, and address.


<u>For Prisoners</u>:

I declare under penalty of perjury that on this _____ day of _____, 20___, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.


Signature of Plaintiff:       _____

Inmate Number            _____


*Rev. 12/2009*                                              4